## UNITED STATES v. COMMONWEALTH COMMERCIAL STATE BANK et al.

No. 14211.

District Court, E. D. Michigan, S. D.

Feb. 14, 1939.

John C. Lehr, U. S. Atty., of Detroit, Mich.

Chas. F. Meyler and Wm. Henry Gallagher, both of Detroit, Mich., for defendants.

O'BRIEN, District Judge.

This case was started by the plaintiff against Commonwealth Commercial State Bank, a corporation, and T. Allan Smith and Fred H. Talbot, its officers. Thereafter Fern C. Schaeffer petitioned for leave to intervene and order was entered granting him the right to intervene as party defendant. When the case was called for trial the plaintiff and defendants Commonwealth Commercial State Bank and T. Allan Smith and Fred H. Talbot agreed to waive trial by jury, but defendant Fern C. Schaeffer, through his counsel, Wm. Henry Gallagher, requested jury. The case proceeded to trial and at the close of the proofs it became evident to the Court that Fern C. Schaeffer was not a proper party defendant, inasmuch as no relief could be granted against him under the issues in this case and he could not secure relief against anyone else, this being an action in personom under Section 1114 of the Revenue Act of 1926, 44 Stat. 116, and not in rem, and the Court thereupon, of his own motion, dismissed Fern C. Schaeffer as a party defendant. Thereupon attorneys for plaintiff and the remaining defendants agreed in open Court that jury be waived and that the case be heard and decided by this Court without a jury; whereupon the Court dismissed the jury and proceeded with the case without jury.

There is only one question in the case and that is, did the defendant Commonwealth Commercial State Bank and its two officers have possession of property or rights to property, subject to distraint and not subject to an attachment or execution under judicial process, belonging to one John J. Hoefle on December 21, 1933, when a Deputy Collector of Internal

Revenue made demand upon said defendants to surrender such property or rights of property to the United States, it being admitted that defendant bank had $10,863.37 in its possession standing in the name of John J. Hoefle.

The answer to this question depends upon two points. First, whether a paper in writing dated November 2, 1933, and allegedly delivered to the defendant bank about November 15, 1933, purporting to be an assignment by John J. Hoefle to Fern C. Shaeffer, his brother-in-law, of his monies held by the bank, was, in truth and in fact, what it purported to be, that is, an assignment, or merely a subterfuge, scheme or device to defraud the United States and other creditors; and second, whether or not the defendant bank acquired a lien upon the money held by it as a result of a certain conversation had on or about the 6th or 8th of November, 1933, between Mr. Charles F. Meyler, counsel for the bank, and John J. Hoefle, the delinquent taxpayer.

■ As regards the first question, I think the evidence is clear and convincing that the assignment by Hoefle to Fern C. Schaeffer, his brother-in-law, was not in fact, an assignment but was, in truth, only a subterfuge, a device and scheme to defraud the plaintiff and other creditors, and on December 21, 1933, the moneys held by the bank belonged to John J. Hoefle.

Mr. Schaeffer claimed that the assignment was made to him to secure him for moneys previously loaned by him to Hoefle. However, the evidence clearly shows that the money he allegedly loaned to John J. Hoefle was all Hoefle's money and came from Hoefle's bank account and was carried in Schaeffer's name merely for convenience. Schaeffer had not asked for any security, and didn't even know of the assignment until long after it was executed, when Hoefle told him. He was not even in Detroit at the time, but was at his home in Ohio. The assignment was never delivered to him, but was delivered to the bank by Hoefle. There is no evidence that Schaeffer ever even saw it. There is a plethary of other evidence in the case to establish the fact that this money held by the bank belonged to Hoefle, but I think it is not necessary to detail all of it. Suffice it to say that Schaeffer was merely a stooge for Hoefle in his attempt to fraudulently conceal this money from the Government, with whom Mr. Hoefle was having difficulties at that time with regard to his income tax.

The bank never recognized the assignment. The bank knew of the troubles Mr. Hoefle was having with the Government in regard to his income tax. The assignment was delivered to the bank by Mr. Hoefle and not Mr. Schaeffer. The bank never knew Mr. Schaeffer, who he was or anything about him. The account was not transferred to Mr. Schaeffer's name after its alleged assignment, but continued to be carried in Hoefle's name and was so carried when demand by plaintiff was made. Although the assignment was dated November 2, 1933 the bank thereafter dealt with and treated with Mr. Hoefle as the owner of the fund and not Mr. Schaeffer. At no time did the bank contact Mr. Schaeffer or Mr. Schaeffer the bank. All contacts with the bank in regard to this money were had by Mr. Hoefle. The bank knew of Mr. Hoefle's difficulties in regard to alleged forged checks and the other suspicious circumstances surrounding the assignment. It would be stretching the credulity of bankers and lawyers to say the bank didn't know the purported assignment was fictitious.

■ The second question is whether or not the bank had a lien upon this money held by it at the time of the demand of the Government. The basis for this alleged lien is an oral conversation held between Mr. Charles F. Meyler, one of the attorneys for the bank, and Mr. Hoefle, as a result of which the bank claims it secured a lien upon the moneys. The testimony in regard to this oral conversation is quite vague and uncertain. Mr. Meyler testified that Mr. Hoefle came in about the second of November and demanded the money and the bank refused to give it to him. About a week later he came back and at their second conversation, according to Mr. Meyler, Mr. Hoefle agreed that the funds would be held by the bank until its liability was determined, and that the bank could deduct from such sums any moneys the bank had to pay out because of its endorsement of forged checks. Mr. Hoefle didn't owe the bank a dime at that time and never did at any time thereafter. Nothing was said about attorneys' fees or expenses and the word "lien" was not mentioned. The bank never had to pay out any moneys because of such alleged forged checks and never suffered a dime's loss by reason thereof.

However, the bank claims a lien for several thousand dollars because of moneys expended by the bank for attorneys' fees expended in defending suits. These suits for which attorneys' fees were expended were not suits against the Commonwealth Commercial State Bank, but were suits against subsequent endorsers of the checks. The Commonwealth Commercial State Bank asked for the right to defend and did defend, although it was under no legal obligation to do so.

I think it clear from the testimony and evidence that the bank did not obtain a lien as a result of such conversation. There was no debt to secure, and there is no clear evidence of an agreement creating a lien. The bank had previously refused to turn over the money to Hoefle, and the most that can be said of such conversation is that Hoefle acquiesced in such refusal and agreed to cooperate with the bank in defense of suits on the checks. Even if by stretch of the imagination it could be held that there was a lien, it certainly would not cover expenses for attorneys' fees etc. spent after the Government's demand.

It is significant that Mr. Hoefle, the only other party to the conversation, was not called by the bank to substantiate such lien and the Court must, therefore, assume that if it had called Mr. Hoefle that Mr. Hoefle would have testified to the contrary, that is, that the bank did not have a lien and that he was under no obligation to pay the expenses.

I think it also significant that Mr. Meyler, an able attorney of wide experience and background, acting for the bank, never reduced the agreement to writing. If it had been the intention of the parties that the bank should have a lien upon the fund held by it, I think Mr. Meyler would have reduced the agreement to writing, rather than accept an oral agreement with a man who had been charged with forging checks.

I must, therefore, conclude that, as a matter of fact, on December 21, 1933, when a demand was made by the Deputy Collector of Internal Revenue that such money be paid to the Government, the bank had no lien upon the funds held by it belonging to John J. Hoefle, and I must also conclude that, as a matter of operation of law, the bank had no lien upon such funds.

I therefore conclude that, as on December 21, 1933, the defendants Commonwealth Commercial State Bank and its two officers were in possession of the sum of $10,863.37 belonging to John J. Hoefle, being property or rights to property subject to distraint, and that such was not subject to attachment or execution on any judicial process or any lien, and that the plaintiff is entitled to recover from the defendants such sum, plus interest at 6% to the date hereof.

The findings of fact and conclusions of law as requested by the plaintiff will be adopted as the findings of fact and the conclusions of law of this Court, and judgment may be entered for the plaintiff.